**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000577
28-MAR-2024
07:48 AM
Dkt. 71 SO**

NO. CAAP-23-0000577

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF M.O., BORN ON 00/00/2014
AND H.F., BORN ON 00/00/2016

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 21-00019

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

Appellant Mother (**Mother**) appeals from the Order Terminating Parental Rights entered on September 27, 2023, in the Family Court of the First Circuit (**Family Court**) in FC-S No. 21-00091 (**TPR Order**).[1]  The TPR Order terminated the parental rights of Mother, and the respective fathers to M.O. and H.F. (together, **Children**), awarded permanent custody of the Children to Appellee Department of Human Services (**DHS**), and approved a permanent plan with the goal of adoption for the Children by the current Resource Caregiver (**RCG**).

---

[1]     The Honorable Brian A. Costa presided.

Mother contends that (1) the Family Court abused its discretion when it took jurisdiction over DHS's petition when there was no Chuukese interpreter present for Mother at the first hearing, even though Mother is Micronesian and speaks Chuukese as her first language, and that interpreter services provided during later proceedings were inadequate. Mother also contends that DHS failed to establish by clear and convincing evidence that: (2) DHS exerted reasonable efforts to reunite the Children with her; (3) Mother is not willing and able to provide the Children with a safe family home, and will not be willing and able to do so in the reasonably foreseeable future, even with the assistance of a service plan; and (4) DHS's permanent plan dated July 6, 2022, is in the best interests of the Children. Mother also challenges certain aspects of the Family Court's November 9, 2023 Findings of Fact and Conclusions of Law (**FOFs/COLs**). Mother contests FOFs 11, 13, 59, 63, 79-81, 89-99, 101, 106-110, 172, 176, 189, 191-193, 203, 208-209, 213-215, and 217-218 as clearly erroneous and COLs 13-18 as based on erroneous findings.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's contentions as follows:

(1) Mother argues that the Family Court abused its discretion by taking jurisdiction over DHS's petition at the first return hearing because there was no Chuukese interpreter for Mother at that hearing and interpreter services provided during later proceedings were inadequate.

On November 24, 2020, RCG filed a petition for guardianship because Mother had left the Children in her care in March 2020, and she had not heard from Mother since. On February 1, 2021, DHS filed a petition for foster custody of M.O., born in 2014, and H.F., born in 2016, after being ordered to do so in separate guardianship proceedings filed by RCG.

The Family Court held a hearing on DHS's petition for foster custody on February 3, 2021, but there was no proof of service made on any of the parents. The Family Court found that there was reasonable cause to believe that continued emergency foster care was necessary for the Children, appointed a guardian ad litem for the Children, and scheduled a further return hearing for May 24, 2021.

Mother and the Father of H.F. (**Father 2**) appeared on May 24, 2021, and both were appointed counsel. The father of M.O. (**Father 1**) was incarcerated in Arizona and had not been served. Father 2 stipulated to the award of foster custody of H.F. to DHS and the service plan dated February 1, 2021. However, the hearing was continued as to Mother to obtain a Chuukese interpreter for her.

On June 22, 2021, Mother appeared with court-appointed counsel and a Chuukese interpreter, contested the petition for foster custody and the Family Court scheduled trial for August 4, 2021. After trial on August 4, 2021, and September 27, 2021, the Family Court denied DHS's request for foster custody, ordered the Children returned to Mother, but granted DHS family supervision

over the Children. The Family Court scheduled a review hearing for October 12, 2021.

Mother argues she was prejudiced by the lack of an interpreter at the initial hearing, which tainted the entire proceedings. Mother also contends that the interpreter services provided during later proceedings were inadequate, and she was required to share an interpreter at one hearing.

Although an interpreter was not present at the first return hearing at which Mother appeared, the Family Court continued the hearing as to Mother to obtain an interpreter. Mother does not demonstrate an abuse of discretion or error by the Family Court.

Mother is correct that at one hearing, on October 12, 2021, only one Chuukese interpreter was present even though she and Father 1 were in attendance. However, the October 12, 2021 hearing was Father 1's first appearance, and the Family Court ordered the parties back for a further hearing on November 12, 2021, where two interpreters were present on November 12, 2021. Mother fails to demonstrate prejudice or state that she objected to being required to share an interpreter for that one hearing.

The difficulties with interpreters that were pointed out by Mother during later proceedings appear related to challenges inherent in conducting the hearing through Zoom, which arose from Mother having stated that it would be a financial hardship to return in person for the trial.

Under the circumstances of this case, we conclude that the Family Court did not abuse its discretion or deny Mother her rights by failing to provide adequate Chuukese interpretation.

(2) Mother challenges FOF 213 and 214, which found that DHS made reasonable efforts to reunify the Children with her and gave her every opportunity to succeed in remedying the problems in the home that subjected the Children to substantial risk of harm. Mother argues that Hawaii Revised Statutes § 587A-27(c) (2018) requires the court to ensure that each term, condition, and consequence of the service plan has been thoroughly explained to, understood by, and agreed to by each member of the child's family whom the authorized agency deems necessary to the success of the service plan." Mother contends that there is no proof in the record that DHS translated the service plan for her and that the findings that DHS made reasonable efforts to reunite the Children with her and gave her every opportunity to succeed are clearly erroneous. Mother points to a July 5, 2022 Safe Family Home Report, in which DHS acknowledged that it understood DHS was required to "translate the service plan into Chuukese and have Mother state that she understands and then signs the plan OR have an interpreter present and explain the service plan to [Mother] and then have her sign."

Although there is no service plan translated or signed by Mother in the record, the record shows efforts were made by DHS to translate for Mother what was required of her under the service plans. On October 20, 2021, DHS social worker Tracey

5

Zhang connected with an interpreter and Mother to explain the service plan to Mother with the assistance of the interpreter. When asked if she had any questions, Mother responded no.

On January 10, 2022, DHS social worker Esera Esera, with the assistance of an interpreter, discussed and explained the Family Service Plan dated December 27, 2021. The DHS social worker also explained to Mother that she needed to be consistent in calling DHS every Monday at 10:00 a.m. so that DHS could arrange for an interpreter. However, Mother phoned in on only one Monday and missed calling in three Mondays after that.

When Mother moved to Louisiana, DHS requested a Home Study from Louisiana, and the individual assigned to the request indicated that she would look into finding a Chuukese interpreter. Mother testified that she asked Tyler Behavioral Health for an interpreter, but was denied one because they were able to understand what she was saying. Notwithstanding the lack of an interpreter, Mother successfully completed 7 of 7 sessions of the Family Skills Building Parenting Class in Louisiana, which suggests that Mother was not prejudiced by the lack of an interpreter in Louisiana. In addition, at the permanency hearing on June 7, 2023, the Family Court specifically went over with Mother what was required of her under the service plan and added in the requirement that Mother call DHS every Monday at 10:00 a.m., so that DHS could arrange for an interpreter to discuss the case and progress. On this record, Mother fails to demonstrate that the failure to provide her an interpreter at every encounter

with her caused her prejudice or made the proceedings fundamentally unfair.

(3)  Mother challenges FOF 209 and COLs 13, 14 and 15, which support the Family Court's determination that Mother, Father 1 and Father 2 are not willing and able to provide a safe family home for the Children now or in the reasonably foreseeable future, even with the assistance of a service plan.  Mother's contention lacks merit because the Children were in emergency foster custody of DHS as of January 27, 2021, entered foster care on March 28, 2021, spent only three months in Mother's care, from September 27, 2021, through December 27, 2021, under CPS supervision, and by the time trial concluded on September 12, 2023, Mother still had not completed the recommended substance abuse treatment or non sex-offender therapy, which had been recommended for her because M.O. reported being sexually abused by male relatives, but Mother did not seek treatment for M.O. Father 1 was still incarcerated, and Father 2 stipulated that he was not able to provide a safe family home.

In a substance abuse assessment of Mother dated July 27, 2021, completed by Hina Mauka, Mother admitted to previously using methamphetamine, but claimed she stopped in August 2020, when she moved to Louisiana with her boyfriend and their son, leaving the Children in the care of her boyfriend's sister. Mother also admitted past use of marijuana and alcohol, starting at age 16.  Mother had four negative drug screens between July 27, 2021, and August 19, 2021, was a no-show for seven drug screens between September 7, 2021 and November 3, 2021, which

were thus presumed positive, had a negative drug screen on November 15, 2021, but tested positive for amphetamine and methamphetamine on November 22, 2021.  Mother was a no show again on December 2, 2021, and December 8, 2021, before having another negative drug screen on December 20, 2021, but was a no show again on January 31, 2022.  Mother had negative drug screens on February 2, 2022, and February 8, 2022, but tested positive for THC on February 28, 2022, and for amphetamine, methamphetamine and THC on March 16, 2022.  On March 18, 2022, Hina Mauka recommended a residential substance abuse treatment program and random drug monitoring upon discharge.  However, Mother moved to Seattle in March 2022, without completing services here.

Mother said she would complete services in Seattle.  However, Mother was a no show for drug screens scheduled for April 14, 2022, April 29, 2022, May 17, 2022, and June 17, 2022, in Seattle.  She then moved to Louisiana, had another assessment done for her by Tyler Behavioral Health Clinic on March 9, 2023, completed only 2 of 16 recommended substance abuse services sessions, tested positive for methamphetamines and marijuana on a drug screen on March 17, 2023, and refused to submit to random drug screens on March 10, 2023, May 1, 2023, May 4, 2023, and May 9, 2023.  Because Mother did not comply with substance abuse services recommended for her by Tyler Behavioral Health Clinic, the Louisana Department of Children and Family Services denied DHS's request for a home study on whether it was feasible to place the Children with Mother in Louisiana.

The evidence of multiple positive drug screens and no shows for drug screens, Mother's failure to complete drug treatment in both Hawaiʻi and Louisiana, and the length of time the Children have been in foster care, are substantial evidence of Mother's inability to provide a safe home for the Children now or in the reasonably foreseeable future, even with the assistance of a service plan.

(4)  Mother challenges the Family Court's determination that the permanent plan is in the best interest of the Children, and FOF 218 and COLs 16, 17 and 18, which support that determination.  Mother argues that the permanent plan proposes adoption by RCG but RCG lied when testifying, which calls into question her suitability to parent.  Mother also argues that if RCG adopts the Children, it would make visitation between the Children and Mother more difficult.

Although Mother argues RCG falsely testified she was the only one caring for the Children, Mother does not point out where in the record that testimony occurred.  The Family Court specifically found in FOF 63P that RCG was credible when she testified that she was not the only one caring for the Children prior to the opening of the case even though RCG "was off on time frames when she testified."  We decline to disturb the Family Court's determination of the credibility of the witnesses and the weight given to their testimony.  See, e.g., Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawaiʻi 286, 296-97, 141 P.3d 459, 469-70 (2006).

9

There also was substantial evidence to support the
Family Court's determination that the Children's adoption by RCG
and her husband are in the best interest of the Children.  The
following FOFs are unchallenged by Mother:

> 51.  The Court summarized its in-camera meeting with [H.F.],
> which included [H.F.'s] wish to remain with her current resource
> caregiver - [RCG and husband].
>
> 197.  From December 27, 2021 to June 20, 2022, the children
> were placed [in] a general licensed home.  Unfortunately, [H.F.] had
> disruptive behaviors, and demanded more attention than [the] [RCG]
> could provide.
>
> 198.  On June 20, 2022, the Children were placed back in the
> home of [RCG] who had filed the original petition for legal
> guardianship.  The Children were already familiar with [RCG], and
> the Children appeared comfortable in her home with a sense of trust
> and security.
>
> 202. [RCG] is familiar with the Children having been the
> Children's caregiver before this matter started when she petitioned
> for legal guardianship. [RCG] is married to [husband] and they are
> both committed to providing consistent and permanent care for the
> Children.  The long-term stability of adoption by [them] is in the
> Children's best interest.  Furthermore, [RCG] credibly testified
> that she is willing to maintain contact with Mother after adoption.

Steven Choy, Ph.D., the Children's therapist since June
2021, testified that permanency for the Children is important
because the longer it takes to decide where children will live, it
significantly increases psychological problems, and Mother was
being very inconsistent in her contacts with the Children and
making changes necessary to reunify with the Children.  DHS
Supervisor Elizabeth Saga-Petai, also testified that Mother's
inconsistent parenting and frequent absences were negatively
affecting the Children, and the permanent plan, with the goal of
adoption, would provide the Children stability.  The Children's
GAL also was in favor of terminating parental rights so that the
Children could be adopted by RCG, because the children were in
foster care for over two years, had been with RCG continuously for

over a year, and granting them permanency as quickly as possible would be in their best interest. The Family Court's findings and conclusion that the goal of the permanent plan of eventual adoption of the Children by RCG and her husband is in the best interest of the Children, FOF 218 and COL 16, 17, and 18, are supported by substantial evidence and are not clearly erroneous.

Mother contests FOFs 11, 13, 59, 63, 79-81, 89-99, 101, 106-110, 172, 176, 189, 191-193, 203, 208-209, 213-215, 217-218, as unsupported by the evidence, and challenges COLs 13-18 as based on erroneous findings, but does not present argument beyond what has already been discussed. Based on our review of the record, we conclude that the challenged FOFs and COLs, which present mixed issues of fact and law, are supported by substantial evidence and are not clearly erroneous.

For these reasons, the Family Court's September 27, 2023 TPR Order is affirmed.

DATED: Honolulu, Hawaiʻi, March 28, 2024.

| On the briefs: | /s/ Katherine G. Leonard<br>Acting Chief Judge |
|---|---|
| Crystal M. Asano,<br>Court-Appointed Counsel,<br>for Mother-Appellant. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Gay M. Tanaka,<br>Julio C. Herrera,<br>Patrick A. Pascual,<br>Ian T. Tsuda,<br>Deputy Attorneys General,<br>State of Hawaiʻi,<br>for Petitioner-Appellee. | /s/ Sonja M.P. McCullen<br>Associate Judge |